UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| PATRICIA MILLER and MARCIA PARKER,<br><br>    Plaintiffs,<br><br>        v.<br><br>FOUR WINDS INTERNATIONAL CORPORATION, a Delaware corporation; and DOES I through V,<br><br>    Defendants. | Case No. 2:10-cv-00254-CWD<br><br>**MEMORANDUM DECISION AND ORDER** |

## INTRODUCTION

Plaintiffs Patricia Miller and Marcia Parker bring this breach of warranty action under the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 *et seq*., against Four Winds International Corporation ("Four Winds").[1] Plaintiffs allege that the motor home they purchased in 2008, which was manufactured and warranted by Four Winds, suffers from numerous defects and that Four Winds failed to repair the motor home under the terms of a limited warranty. Plaintiffs claim that the motor home has no value due to its numerous

---

[1]  Plaintiffs also raise a claim for breach of express warranty and assert that jurisdiction is proper in this case based upon diversity of citizenship, 28 U.S.C. § 1332, and because the case involves questions of federal law. *See* 28 U.S.C. § 1331.

defects and seek a refund of the purchase price.

Four Winds has filed a Motion for Partial Summary Judgment, (Dkt. 64), arguing that the remedy Plaintiffs seek – a refund of the purchase price of the motor home – is not available under the Magnuson-Moss Warranty Act or Idaho's version of the Uniform Commercial Code. Four Winds also has filed a Motion for Spoliation Sanctions, (Dkt. 55), alleging that Plaintiffs lost relevant evidence after Four Winds repeatedly requested production of the evidence. On August 23, 2011, the Court conducted a hearing during which the parties presented oral arguments on the motions. Following the hearing on the motions, Four Winds filed a Motion to Defer Ruling on Motion for Partial Summary Judgment (Dkt. 85) and a Motion to Certify a Question to the Idaho Supreme Court. (Dkt. 86.) All the motions have been fully briefed and are ripe for adjudication.

Having fully reviewed the motions, the parties' memoranda and supplemental materials filed in support of each party's position, and for the reasons discussed below, the Court will make the following rulings. First, the Court finds that Four Winds has sufficiently demonstrated spoliation and that an adverse inference jury instruction may be an appropriate sanction in this case. Therefore, Four Winds' Motion for Spoliation Sanctions (Dkt. 55) will be granted in part. However, the propriety of such an instruction will depend upon the evidence offered at trial, and, as such, the Court will defer ruling on the jury instruction issue until the appropriate time at trial.

Second, Four Winds is correct that Plaintiffs may not seek a refund of the purchase price of their motor home for the alleged breach of a limited warranty under the

Magnuson-Moss Warranty Act or under the applicable provisions of the Idaho Code. Therefore, Four Winds' Motion for Partial Summary Judgment (Dkt. 64) will be granted in part. This ruling, however, will not preclude Plaintiffs from attempting to prove "special circumstances" within the meaning of Idaho Code § 28-2-714, or establishing damages through a measure other than diminution in value, which is the ordinary measure of damages for breach of warranty under Idaho law.

Finally, concerning Four Winds' motion to defer ruling on its motion for summary judgment and motion to certify a question to the Idaho Supreme Court, the Court finds that the question at issue in this case, which is essentially evidentiary in nature, is not appropriate for certification. Therefore, Four Winds' Motion to Certify a Question to the Idaho Supreme Court, (Dkt. 86), will be denied and Four Winds' Motion to Defer Ruling on Motion for Partial Summary Judgment, (Dkt. 85), will be denied as moot.

## BACKGROUND

In June of 2008, Patricia Miller and Marcia Parker purchased a new Presidio model motor home from a dealer named Blue Dog RV in Post Falls, Idaho. Plaintiffs purchased the vehicle for $239,628.00. The motor home was manufactured and assembled by the Mandalay Luxury Division of Four Winds International Corporation.[2] When they purchased the motor home, Plaintiffs received a manufacturer's limited

---

[2] The parties dispute the extent to which Four Winds manufactured and assembled the motor home. Four Winds alleges that it "manufactured, in part, and assembled, in part, the motorhome." (Dkt. 66.) Four Winds does not elaborate on what "in part" entails or whether this fact has any legal significance.

warranty, which obligated Four Winds to repair or replace defective material or workmanship at no charge to the owner for a one year period of time. The limited warranty contains the following provision:

> In the event that a substantial defect in material or workmanship, attributable to Presidio, is found to exist during the warranty period, Presidio will repair or replace the defective material or workmanship, at its option, at no charge to the RV owner, in accordance with the terms, conditions and limitations of this Limited Warranty.

(Dkt. 67-3.) The warranty expressly does not cover any materials or components of the motor home that are warranted by another entity, such as the engine, drive train, batteries, gauges, generator, hydraulic jacks, audio/video equipment, etc. (*Id*. at 4.) The warranty also excludes from coverage "[i]tems that are working as designed but that you are unhappy with because of the design." (*Id*.)

Plaintiffs allege in their complaint that they began experiencing serious problems with the motor home shortly after they purchased it. When Plaintiffs first "leveled" the vehicle after taking it home from the dealer, "the front windshield cracked from top to bottom, and a latch on an outside cabinet broke, evidencing structural stress issues." (Dkt. 1 at 3.) This was the first of many problems Plaintiffs experienced with the motor home.

In July of 2008, Ms. Miller took the motor home on a trip to Oregon during which she experienced problems with the motor home's "slide outs." When she contacted Four Winds about the issue, she was told that the factory would not be able to repair the motor home until five or six months of time expired. (*Id*.) The delay in fixing the motor home

caused Ms. Miller to miss a family reunion and from visiting her ailing mother, who passed away on October 1, 2008. Plaintiffs allege that, due to the unreliability of the motor home, Ms. Miller was forced to travel by airplane to attend her mother's funeral.

Plaintiffs allege that Four Winds made arrangements to repair the motor home, but required Plaintiffs to deliver the motor home to a site in Fontana, California. "During the trip to the repair facility the large slide dislodged with the bottom of the slide sticking out about a foot . . . prevent[ing] Ms. Miller from driving the RV, and she was stuck in the middle of Montana without food, heat or even the ability to access her bedroom due to the malfunctioning slide." (Dkt. 1 at 3-4.) The dealer sent employees to temporarily fix the motor home and Ms. Miller eventually arrived in California, where she found the repair site closed due to the owner being on vacation in Mexico. Ms. Miller alleges she was forced to make alternative arrangements both for storing the motor home and for housing herself until the motor home was fixed. At one point, when Ms. Miller attempted to retract the slide on the motor home so she could drive to the repair facility, one of the hydraulic lines burst, causing a mist of hydraulic fluid to spray throughout the interior of the vehicle. (*Id.* at 4.) Ultimately, the motor home was in California for almost six months of time until the repairs were completed.

Plaintiffs allege that, in May of 2009, the tile floor of the motor home began to lift, causing Ms. Miller to cut her foot. Additionally, the bathroom and kitchen walls began to bow. Then in July of 2009, Ms. Miller took the motor home to the dealer for a final check before she started a long trip in the vehicle. "The mechanics at the dealership

checked the slide several times to make sure it was operating correctly [but] [t]he slides again became stuck, and the mechanics were unable to get them back into place." (Dkt. 1 at 6.)

Plaintiffs' complaint identifies several other problems with the motor home. Plaintiffs state: "[d]espite more than ten trips to repair facilities in the first year of ownership, these issues have persisted" and "Defendant has ultimately been unable to adequately repair the motor home in compliance with its written warranty." (Dkt. 75 at 2.) Ms. Miller stated in her deposition that the motor home has "zero" value to her, and that she could not in good faith sell the motor home to someone else due to the extent and history of the vehicle's problems. (Dkt. 67-4 at 4.)

Plaintiffs filed this action against Four Winds on May 18, 2010. Plaintiffs identify two claims for relief. First, Plaintiffs allege breach of express warranty. Second, Plaintiffs assert a claim under the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 *et seq*. Plaintiffs seek a full refund of the purchase price, with Four Winds to accept return of the motor home.

## DISCUSSION

### 1. Motion for Spoliation Sanctions

#### A. *Facts*

During her deposition on December 16, 2010, Plaintiff Patricia Miller testified that she had recordings of voice mail messages left on her cellular telephone by employees or other representatives of Four Winds. The messages were saved approximately two years

prior to the deposition. Ms. Miller testified that she still had access to some of the messages but that: "I haven't gone through my backlog of voicemails[,] I just save them because so many names changed." (Dkt. 57-1, Deposition of P. Miller at 196.) Counsel for Four Winds admonished Ms. Miller not to delete the voice mails and requested that Plaintiffs' counsel make a copy of the voice mails to produce for the Defendant.

When the voicemails were not produced, Four Winds again requested the recordings by email on January 12, 2011, and served a formal request for production on Plaintiffs' counsel on January 26, 2011. Additional requests for production of the voice mails were made on March 31, April 14, and May 5, 2011.

On April 19, 2011, Plaintiffs' counsel sent defense counsel an e-mail stating that he was working on getting the voice mails together and that "[Ms. Miller] told me this morning that she still has access to them." (Dkt. 57-6 at 2.) He also proposed a transcript in lieu of production of the recordings in their original format. (*Id*.) On May 3, 2011, Plaintiffs' counsel notified Four Winds that he was not sure whether the messages were capable of being recovered, stating: "Ms. Miller is in the process of conferring with her cellular phone provider to determine if the cell phone messages she referenced as still available [and] [a]s of today's date, I do not know if those messages are capable of being recovered." (Dkt. 57-7.) Then, on May 20, 2011, Plaintiffs' counsel informed Four Winds that the messages were not retrievable. (Dkt. 57-9.)

**B.**     *Legal Standard for Spoliation Sanctions*

Federal trial courts have the inherent discretionary authority to make appropriate evidentiary rulings and to levy sanctions in response to the destruction or spoliation of relevant evidence. *Glover v. BIC Corp.*, 6 F.3d 1318, 1329 (9th Cir. 1993).[3]  Sanctions for spoliation include dismissal of claims, exclusion of evidence, and adverse jury instructions in which the jury is informed that it may presume that the destroyed evidence, if produced, would have been adverse to the party that destroyed or failed to preserve it. *See Unigard Security Ins. Co. v. Lakewood*, 982 F.2d 363, 368-70 (9th Cir. 1992).  A finding of bad faith is not required before spoliation sanctions may be imposed – sanctions may be imposed on the basis of simple notice of potential relevance to the litigation. *See Glover*, 6 F.3d at 1329.

**C.**     *Analysis*

Based upon Plaintiffs' failure to produce the voice mails, Four Winds has filed a motion requesting spoliation sanctions.  Four Winds requests that the Court impose two sanctions: (1) the exclusion of any and all evidence and testimony of statements, representations, or admissions made verbally by any past or present Four Winds employee or representative; and (2) an instruction to the jury that it may infer from Plaintiffs' failure to produce the voice mail recordings that the content of the messages

---

[3]  Spoliation is defined as the intentional destruction or alteration of evidence, or the knowing failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation. Black's Law Dictionary 1409 (7th ed. 1999).

was unfavorable to Plaintiffs' case.[4]

Plaintiffs do not dispute that the lost voice messages were relevant to their claims. In their complaint, Plaintiffs allege that Four Winds made various agreements with Plaintiffs about repairing or replacing the motor home, but then reneged on those agreements. As Four Winds points out, "[t]he recordings are perhaps the best evidence of the nature, scope, and content of communications between Plaintiffs and Four Winds," and "[t]he voicemail recordings would have shed light on the credibility of her allegations and the content of Four Winds employee statements including statement of people who allegedly lied to Plaintiffs." (Dkt. 56 at 6.)

Plaintiffs do, however, oppose Four Winds' motion on two grounds. First, Plaintiffs assert that no sanctions should be imposed because Ms. Miller did not destroy the voice messages.  Second, Plaintiffs argue that, even if the Court finds spoliation, the Court should give an adverse inference instruction, but not exclude testimony concerning all previous conversations with Four Winds employees.  Both of Plaintiffs' arguments are addressed below.

In response to Four Winds' motion for sanctions, Plaintiffs submitted the Affidavit of Patricia Miller. (Dkt. 72.)  In her affidavit, Ms. Miller reiterates that she saved the

---

[4] Four Winds requests the following instruction: "Plaintiffs failed to produce recorded voicemail messages left by past or present Four Winds employees or representative.  Those voicemail recordings were under Plaintiffs' control and reasonably available to Plaintiffs and not reasonably available to Four Winds.  You may infer that the voicemail recordings were unfavorable to Plaintiffs, who could have produced them and did not." (Dkt. 55 at 2.)

**MEMORANDUM DECISION AND ORDER - 9**

voice messages over two years ago and that, at the time of the deposition, she "believed that these messages were still saved on [her] cellular phone." (*Id*. at 1.)  Ms. Miller also states the following:

> I honestly thought that the messages were saved.  I assumed that when I saved the messages one time they would remain there forever and I could access the messages later.  When questioned by my attorney about the issue, I told my attorney that I believed I could still access the messages.
>
> In the spring of 2011[,] I had to get a new cell phone because mine was water damaged.  When I got my new phone, I attempted to access the voicemail messages that I thought I had saved.  I was not able to access the messages at that time.
>
> A Verizon employee informed me that there was no way to access these voicemail messages because they had been deleted from my old phone memory due to the water damage and they were so old that they could not be accessed from my new phone.  I[] understand that it is Verizon's policy to automatically delete these messages after a certain period of time.

(*Id*. at 3.)

Four Winds takes issue with the statements in Ms. Miller's affidavit.  First, Four Winds points out that, although the messages purportedly were lost in the Spring of 2011, when Ms. Miller's cell phone suffered water damage, the Plaintiffs failed to produce the messages in either January, or February, or March of 2011 after defense counsel already had made the requests for production.  Second, Four Winds points out that, while Plaintiffs refer to Verizon Wireless's message-deletion policy, Plaintiffs do not indicate how long messages are preserved pursuant to that policy or if Plaintiffs ever found out

exactly when or how the messages were lost.

The question that Plaintiffs have not answered, and perhaps the most important question for purposes of the spoliation analysis, is *when were the voice messages no longer accessible?* Plaintiffs have not answered this question. Because Ms. Miller represented on multiple occasions that she could in fact access the messages, and she has not provided the Court with any evidence of when the messages were no longer accessible, the Court finds that spoliation did occur.

As Four Winds has demonstrated that relevant evidence was lost while in Plaintiffs' control, the next question is whether the proposed sanctions are appropriate in this case. Four Winds requests two sanctions: (1) an adverse inference instruction – allowing the jury to draw the inference that the withheld evidence was unfavorable to the suppressing party's case; and (2) the exclusion of testimony by Plaintiffs concerning all statements made by former and current Four Winds employees. Plaintiffs argue that, even if the Court finds spoliation, the sanctions requested by Four Winds are too harsh. The Court agrees.

Factors to be considered when determining the severity of the sanction to impose against a party for failure to preserve evidence include: (1) willfulness or bad faith of the party responsible for loss of evidence; (2) degree of prejudice sustained by opposing party; and (3) what is required to cure prejudice. *See Swofford v. Eslinger*, 671 F. Supp. 2d 1274, 1280 (M.D. Fla. 2009). Courts generally will not impose a significant sanction for spoliation, unless there is a showing that the spoliation was willful and the loss of

evidence prejudiced the opposing party. *See Aiello v. Kroger Co.*, 2010 WL 3522259 (D. Nev. Sept. 1, 2010); *see also Byrnie v. Town of Cromwell, Bd. of Educ.*, 243 F.3d 93, 108 (2d Cir. 2001). "The loss or destruction of evidence qualifies as willful spoliation if the party 'has some notice that the documents were potentially relevant to the litigation' before they were lost." *Aiello*, 2010 WL 3522259 at *3 (quoting *Leon v. IDX Systems Corp.*, 464 F.3d 951, 959 (9th Cir. 2006)).

The Ninth Circuit has addressed circumstances under which various sanctions for spoliation (including adverse inference instructions and the exclusion of evidence) are appropriate. *Unigard Sec. Ins. Co. v. Lakewood Eng'r & Mfg. Corp.*, 982 F.2d 363 (9th Cir. 1992). In *Unigard v. Lakewood*, the court of appeals upheld the district court's exclusion of evidence and the determination that an adverse inference instruction would be insufficient to cure the prejudice arising from the spoliation that occurred in that case. The court of appeals first looked to its ruling in *Wong v. Swier*, 267 F.2d 749 (9th Cir. 1959). In that case, the evidence of tampering was equivocal, the alleged tampering had been brought to the jury's attention, both parties had the chance to inspect the evidence before the alleged tampering, and significant evidence remained for the jury to consider. Given the above circumstances, the court in *Unigard* stated that, "[i]n such a factual context, a district court's imposition of anything more than a rebuttable presumption against a purported despoiler would be an abuse of discretion." *Unigard*, 982 F.2d at 369. The court in *Unigard* then looked at the facts of its own case, where the destruction of evidence was not in dispute, the non-spoiling party was not able to inspect the evidence,

and the loss of the evidence "rendered unreliable virtually all of the evidence that a finder of fact could potentially consider." *Id.* The court held, "[g]iven these factors, it was within the district court's discretion to determine that a rebuttable presumption against Unigard would have been insufficient to cure the prejudice arising in the context of this case." *Id.*

This case is closer to the circumstances present in *Wong*. The Court recognizes that Four Winds did not have the opportunity to listen to the messages before they were lost. Like the facts in *Wong*, however, because it is unclear in this case when the voice messages were no longer accessible, the evidence of spoliation is equivocal. Four Winds argues that "an adverse inference would not fully cure the harm of Plaintiffs' spoliation because it would leave Plaintiffs free to tell their own story, unchecked by the evidence they failed to preserve." (Dkt. 73 at 6.) The Court disagrees. Four Winds' contention that Plaintiffs' story will be unchecked without the exclusion of testimony concerning any and all conversations between Ms. Miller and employees of Four Winds is overstated. For example, Four Winds can cross examine Ms. Miller as to conversations with Four Winds employees that occurred before and after the voice messages were left on her cellular phone. Four Winds also can introduce testimony from its employees that spoke with Ms. Miller concerning their conversations.

Ultimately, the jury will have to decide whose story is more credible and an instruction informing the jury that it may infer from Plaintiffs' failure to produce the voice messages that they were harmful to Plaintiffs' case may be an appropriate and

adequate sanction in this case. The Court will decide whether such an instruction will be given after considering the evidence offered and admitted at the time of trial. Furthermore, neither party shall mention the lost voice messages nor shall the attorneys make reference to the same unless first doing so as an offer of proof outside the presence of the jury.

**2.     Defendant's Motion for Partial Summary Judgment**

Defendant Four Winds moves for partial summary judgment on two grounds. First, Four Winds asserts that the remedy Plaintiffs seek – refund of the purchase price of the motor home – is not an available remedy under the Magnuson-Moss Warranty Act or Idaho's version of the Uniform Commercial Code ("Idaho UCC").  Second, Four Winds argues that Plaintiffs' remedies are limited to those provided for in the warranty, which expressly limits the remedies Plaintiffs may seek to repair or replace defective materials or workmanship. For their part, it is clear from Plaintiffs' filings that they contend the warranty failed its essential purpose, which allows Plaintiffs to seek remedies outside of those provided for in the warranty under the Idaho UCC. Plaintiffs also argue that the "special circumstances" exception to the general measure of damages for breach of warranty applies in this case, and that they may prove and recover damages – up to the amount of the purchase price of the motor home – in any manner reasonable under § 28-2-714(2) of the Idaho UCC. In response, Four Winds argues that, even assuming the limited warranty failed its essential purpose, Plaintiffs are nonetheless limited to repair and replacement because they have failed to produce any evidence supporting an award

of monetary damages. Put a slightly different way, Four Winds argues that Plaintiffs may not avoid the general measure of damages for breach of warranty under the Idaho UCC, which is diminution in value, by simply asserting that the motor home is worthless and failing to offer any evidence that attempts to quantify the value of the motor home.

### A. *Legal Standard for Summary Judgment*

Summary judgment is appropriate when, viewing the facts in the light most favorable to the nonmoving party, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party bears the initial burden of stating the basis for its motion and identifying those portions of the record demonstrating the absence of genuine issues of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). "If the party moving for summary judgment meets its initial burden of identifying for the court those portions of the material on file that it believes demonstrates the absence of any genuine issues of material fact," the burden of production shifts and "the non moving party must set forth, by affidavit or as otherwise provided in Rule 56, 'specific facts showing that there is a genuine issue for trial.'" *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987) (quoting Fed. R. Civ. P. 56(e)).

The absence of disputed material facts does not automatically entitle the moving party to summary judgment; Rule 56(c) requires the moving party to establish, in addition to the absence of a dispute over any material fact, that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *see also*, *Custer v. Pan Am. Life Ins. Co.*, 12 F.3d

410, 416 (4th Cir. 1993). This requires the movant to set forth the legal theory upon which its motion is based and to satisfy the court that undisputed facts clearly lead to the conclusion that it is entitled to judgment on that legal theory.

### B.  *Whether Plaintiffs May Seek a Refund*

In their second claim for relief under the Magnuson-Moss Warranty Act ("Warranty Act"), Plaintiffs state that, "[t]o the extent the remedy is available, Plaintiffs elect a full refund of their purchase price, with the Defendants to accept the return of the Presidio." (Dkt. 1 at 7.)  Four Winds contends that this remedy is not available.

### (i) *Remedies under the Magnuson-Moss Warranty Act*

Four Winds correctly points out that the Warranty Act does contain a "refund-or-replace provision."  Section 2304(a) of the Warranty Act provides:

> if the product (or a component part thereof) contains a defect or malfunction after a reasonable number of attempts by the warrantor to remedy defects or malfunctions in such product, such warrantor must permit the consumer to elect either a refund for, or replacement without charge of, such product or part.

15 U.S.C. § 2304(a).  It is well-settled, however, that this provision applies only to "Full Warranties," and the courts having addressed the question have held that a purchaser who receives only a limited warranty cannot recover remedies under 15 U.S.C. § 2304. *See e.g., Gusse v. Damon Corp.*, 470 F. Supp. 2d 1110, 1116 (C.D. Cal. 2007) ("the federal remedies described in 15 U.S.C. § 2304(a) only apply to full warranties.")  It is undisputed in this case that the applicable warranty is a limited warranty.  Indeed,

Plaintiffs do not dispute that the refund provision contained in § 2304 is not applicable in this case.

Plaintiffs assert that they are bringing their claim under Section 2310 of the Warranty Act, which provides that "a consumer who is damaged by the failure of a supplier, warrantor, or service contractor to comply with any obligation under this chapter, or under a written warranty, implied warranty, or service contract, may bring suit for damages and other legal and equitable relief." 15 U.S.C. § 2310(d)(1). Plaintiffs also assert that, under the Warranty Act, damages are determined by reference to state law. This appears correct. As the Fifth Circuit has stated:

> The Magnuson-Moss Warranty Act is virtually silent as to the amount and type of damages which may be awarded for breach of an express limited warranty. However, the statute provides that nothing in the Act "shall invalidate or restrict any right or remedy of any consumer under State law . . . ." 15 U.S.C. § 2311(b)(1). Furthermore, the legislative history clearly implies that a resort to state law is proper in determining the applicable measure of damages under the Act.

*MacKenzie v. Chrysler Corp.*, 607 F.2d 1162, 1166 (5th Cir. 1979). Thus, the operative question is whether Plaintiffs can seek a refund under Idaho state law.

Before moving on to the remedies available under Idaho state law, it should be noted that Plaintiffs cite a Ninth Circuit case for the proposition that a consumer may seek a refund under the Warranty Act even though the warranty at issue is limited. In *Milicevic v. Fletcher Jones Imports, Ltd.*, 402 F.3d 912 (9th Cir. 2005), a consumer purchased a Mercedes S-500 with a limited warranty obligating the manufacturer to correct defects in

material or workmanship.  Like the case before the Court, in *Milicevic* the purchaser

experienced several on-going problems with the car that were not repaired.  When the

purchaser demanded a refund and the dealer refused, the purchaser brought an action in

Nevada state court against the manufacturer and the dealer for breach of warranty and

relief under the Nevada state lemon law and under the Magnuson-Moss Warranty Act.

The defendants removed the case to federal court and, after a bench trial, the U.S. District

Court for the District of Nevada awarded the plaintiff the purchase price of the vehicle.

The Ninth Circuit affirmed.

Plaintiffs argue that *Milicevic* "establishes that the Plaintiffs may sue directly

under the Act, and seek damages which may include the purchase price of the vehicle."

(Dkt. 75 at 5.) Plaintiffs overstate the holding in *Milicevic*. The key to that case rests in

the fact that the plaintiff sought relief not only under the federal Warranty Act, but also

under the applicable Nevada lemon law, which "states that if an automobile manufacturer,

its agent or its authorized dealer is not able to conform a vehicle to its warranty after a

reasonable number of attempts to repair the vehicle have been made, . . . it must replace

the vehicle or give the purchaser a refund of the purchase price." 402 F.3d at 916 (citing

Nev. Rev. Stat. § 597.630).

Here, Plaintiffs have not sought relief under any comparable Idaho statute or

lemon law that specifically would allow the recovery of the purchase price of the motor

home.

### (ii) *Remedies under Idaho state law*

Four Winds argues that Plaintiffs cannot recover the purchase price of the motor home under Idaho law for two reasons. First, Four Winds asserts that Plaintiffs may not avail themselves of the provision in the Idaho UCC that allows for revocation of nonconforming goods and recovery of a refund because, according to the Idaho Supreme Court, revocation is only available against the seller of goods. *See Griffith v. Latham Motors, Inc.*, 913 P.2d 572, 577 (Idaho 1996). Plaintiffs do not contest this proposition. Second, Four Winds argues that the remedy for breach of warranty under the Idaho UCC does not include a refund remedy. Again, Plaintiffs do not contest this assertion. Plaintiffs argue, however, that "special circumstances" exist in this case within the meaning of the Idaho UCC, and, as such, they may prove damages – including an amount equal to the purchase price – in any reasonable manner.

The Idaho UCC recognizes two scenarios where a buyer may recover the purchase price of nonconforming goods. Under Idaho Code § 28-2-711(1), a buyer may reject unaccepted goods or revoke acceptance of goods accepted and obtain a refund of the purchase price. However, as pointed out above, a buyer may only reject or revoke goods against the seller, not the manufacturer.

Under Section 28-2-719 of the Idaho Code, a warrantor may "limit or alter the measure of damages recoverable." I.C. § 28-2-719(1)(a). Here, the warranty limits Plaintiffs' remedies to repair or replacement of any defective material or workmanship. Four Winds argues that, under the Idaho UCC, Plaintiffs are limited to those remedies.

The Idaho UCC, however, provides an exception to the above rule "[w]here circumstances cause an exclusive or limited remedy to fail of its essential purpose." I.C. § 28-2-719(2).  Plaintiffs do not specifically invoke this exception, but it is clear from their complaint and their response to Four Winds' motion for partial summary judgment that they contend that the warranty has failed its essential purpose: the purpose of the warranty clearly was to keep the parts manufactured by Four Winds in working condition, and Plaintiffs allege that Four Winds failed to repair several malfunctioning parts on several occasions.  At the very least, there are disputed material facts as to whether the warranty failed its essential purpose, i.e., whether Four Winds sufficiently repaired the motor home each time it malfunctioned.

Because the Court has determined that disputed facts exist as to whether the warranty failed its essential purpose, which, if proven, would allow Plaintiffs to seek remedies outside of those provided for in the limited warranty, the next question is what remedies are available for breach of warranty under Idaho law. The Idaho UCC specifically addresses a buyer's remedy for breach of warranty:

> The measure of damages for breach of warranty is the difference at the time and place of acceptance between the value of the goods accepted and the value they would have had if they had been as warranted, *unless special circumstances show proximate damages of a different amount*.

I.C. § 28-2-714(2) (emphasis added).

The first part of the above provision sets forth the general measure of damages for breach of warranty – the difference between the value of the goods as accepted and the value the goods would have had if it had been delivered as warranted, also referred to as diminution in value. According to the Idaho Supreme Court, this is "[t]he usual, although not exclusive, method of ascertaining damages for breach of warranty." *Jensen v. Seigel Mobile Homes Group*, 668 P.2d 65, 72 (Idaho 1983). The second part of the provision, italicized above, provides an exception to the general rule; "If there are 'special circumstances' which indicate a different measure of damages is reasonable, that different measure may be used." *Id*. The Idaho Supreme Court has also made clear that, under the Idaho UCC, "[d]amages for breach of warranty may be determined 'in any manner which is reasonable.'" *Jensen*, 668 P.2d at 72 (quoting I.C. § 28-2-714(1)).

Plaintiffs rely on the exception to the general rule, and argue that, because "special circumstances" exist in this case, they should be allowed to prove damages outside of the normal diminution in value formula. Four Winds asserts that Plaintiffs have not produced any evidence relating to the general measure of damages for breach of warranty – the difference between the value of the motor home as accepted and the value it would have had if delivered as warranted. Four Winds argues that Plaintiffs should not be able to avoid the general measure of damages, and seek what, in essence, would be a refund, by simply asserting that the motor home has no value.

In response, Plaintiffs argue that, under the Idaho UCC, and the Idaho Supreme Court precedent interpreting the statute, they need not prove damages through diminution

in value if special circumstances exist. Specifically, Plaintiffs rely on *Jensen v. Seigel Mobile Homes Group*, in which the Idaho Supreme Court stated that the inability to prove the amount of loss in value caused by breaches of warranty constitutes a special circumstance, "which may enable [plaintiffs] to recover on an alternative measure of damages." 668 P.2d at 73.

Four Winds notes that Plaintiffs' Rule 26 disclosures, which were to contain a computation of any category of damages claimed, state that the "nature of the damages include [sic] the cost of effectively repairing the many defects, if possible, or the replacement of the coach if adequate repairs are not possible," (Dkt. 67-5), but provide no actual computation. Four Winds asserts that the failure to produce competent testimony about the motor home's value should preclude any effort to obtain damages under the Idaho Code.

Plaintiffs direct the Court to the numerous statements by Ms. Miller that the motor home has no value, several examples of incidental and consequential damages due to the alleged breach, and the statement of John Asplund, the owner of Blue Dog RV, that he would not purchase the motor home back from the Plaintiffs due to the motor home's personal history. Plaintiffs also cite an Ohio Court of Appeals case, in which the court of appeals upheld a "special circumstances" verdict where the plaintiffs offered evidence of the sale price of the care, their opinion on the value of the car with its defects, the twelve repair attempts made by the warrantor that failed to fix the car's problems, and the fact that the plaintiffs were left without a vehicle on several occasions. *Cox v Kia Motors Am.*

*Inc.*, 2011 Ohio App. LEXIS 1142 (March 18, 2011).

Finally, Plaintiffs argue that the Idaho UCC does not apply to this case because the warranty is a service contract rather than a contract relating to the sale of goods, and that Plaintiffs may therefore avail themselves of any common law contract remedies available under Idaho law. In response, Four Winds directs the Court to a non-Idaho federal case holding that breach of warranty claims against a manufacturer are governed by statute, not common law. *See Terrill v. Electrolux Home Prods., Inc.*, 753 F. Supp. 2d 1272, 1281 (S.D. Ga. 2010). The Court will not linger on this point as the warranty in this case concerned the repair and replacement of defective *goods* and the Idaho UCC clearly applies. "[T]he Uniform Commercial Code is the primary source of commercial law rules in areas that it governs, . . . [and] while principles of common law and equity may supplement provisions of the Uniform Commercial Code, they may not be used to supplant its provisions . . . unless a specific provision of the Uniform Commercial Code provides otherwise." I.C. § 28-1-103 cmt. n.2.

Based upon the discussion above, the Court finds that Plaintiffs cannot utilize the refund provision under the Magnuson-Moss Warranty Act. Likewise, there does not appear to be a refund provision under Idaho law that Plaintiffs can invoke. Therefore, the Court will grant Four Winds' motion for partial summary judgment as to the refund claim, and finds that, while Plaintiffs may not invoke the refund provision in the Warranty Act or under the provisions of Idaho UCC providing for that remedy, the Plaintiffs may nevertheless present evidence that special circumstances exist in this case.

The Court is not in the position, at this stage in the litigation, to rule that Plaintiffs cannot prove special circumstances as a matter of law. If Plaintiffs sufficiently demonstrate special circumstances at trial, as defined by the Idaho Supreme Court, they then may attempt to demonstrate damages through any reasonable means.

     **C.**     ***Plaintiffs' Design Defect Claim***

Four Winds seeks summary judgment on Plaintiffs' claims for damages due to design defects because the limited warranty expressly excludes claims relating to items that are "working as designed but that you are unhappy with because of the design." This appears to be a non-issue. Plaintiffs make clear in their response that they are not claiming design defects as that term is commonly used in legal parlance. Plaintiffs state "[t]here is an issue of fact as to whether the motor home is 'working as designed.'" (Dkt. 75 at 18.) "Plaintiffs allege that the motor home is not working as it was designed." (*Id*. at 19.) As Plaintiffs point out, "[i]t is illogical to think that the Defendant designed the Presidio to have built-in defects such as buckling tile, slide outs that do not stay in place, and improper leveling." (*Id*.) Therefore, as it appears that Plaintiffs are not making a claim for design defect, Four Winds' motion for partial summary judgment on that issue will be denied.

**3.**     **Four Winds' Motion to Certify**

Shortly after the hearing on Four Winds' motions for partial summary judgment and spoliation sanctions, Four Winds filed a motion to defer ruling on the motion for summary judgement, (Dkt. 85), and a motion to certify a question to the Idaho Supreme

Court. (Dkt. 86.) Four Winds requests the Court to certify the following question to the

Idaho Supreme Court:

> May a buyer, who sues a remote non privity manufacturer for
> breach of express warranty, recover a refund remedy under
> the "special circumstances" exception in I.C. 28-2-714(2),
> where there is no evidence that the general measure of
> damages (that is, the difference in value) either cannot be
> proved or would fail to provide an adequate remedy?

(Dkt. 86.) In other words, Four Winds seeks clarification on what constitutes "special

circumstances" within the meaning of the Idaho UCC, and what a buyer must

demonstrate (as an evidentiary matter) to invoke the exception to the general measure of

damages for breach of warranty.

Idaho Appellate Rule 12.3 provides that a United States District Court may certify

a question of law to the Idaho Supreme Court under certain circumstances:

> (a) Certification of a Question of Law. The Supreme Court of
> the United States, a Court of Appeals of the United States or a
> United States District Court may certify in writing to the
> Idaho Supreme Court a question of law asking for a
> declaratory judgment or decree adjudicating the Idaho law on
> such question if such court, on the court's own motion or
> upon the motion of any party, finds in a pending action that:
>
> (1) The question of law certified is a controlling question of
> law in the pending action in the United States court as to
> which there is no controlling precedent in the decisions of the
> Idaho Supreme Court, and
>
> (2) An immediate determination of the Idaho law with regard
> to the certified question would materially advance the orderly
> resolution of the litigation in the United States court.

Idaho App. R. 12.3. Based upon the above rule, for a question to be eligible for

certification, the question of law must meet three conditions: *first*, it must be controlling in an action pending in an U.S. court; *second*, the question must be controlling on an Idaho state law issue that has not been addressed by the Idaho Supreme Court; and *third*, resolution of the question must materially advance the orderly resolution of the litigation.

Here, the Court finds that certification would not be appropriate. The Idaho Supreme Court has held that the inability to prove the amount of loss in value caused by a breach of warranty constitutes special circumstances within the meaning of the Idaho UCC. *Jensen*, 668 P.2d at 73. This is precisely the argument Plaintiffs have made and continue to make. (See Pl.s' Resp. to Def.'s Mot. to Cert. a Question, Dkt. 94 at 5 ("none of the mechanics, engineers or experts, hired by the Plaintiff or Defendants, can accurately diagnose the cause of the motor home's malfunctions. A jury could find from this evidence (or lack thereof) that the parties are unable to give an exact monetary number for difference in value, and that usual damages cannot be proven.")).

Because the Idaho Supreme Court has addressed the meaning of "special circumstances" within the meaning of the Idaho UCC, although not precisely in the context of the facts of this action, the question sought to be certified does not meet the conditions of Idaho Appellate Rule 12.3. Therefore, Four Winds' Motion to Certify a Question to the Idaho Supreme Court (Dkt. 86) will be denied.

# ORDER

Based on the foregoing, the Court being otherwise fully advised in the premises,

IT IS HEREBY ORDERED that:

1.      Four Winds' Motion for Spoliation Sanctions (Dkt. 55) is GRANTED IN PART AND DENIED IN PART. The exclusion of all the evidence requested by Defendant is not an appropriate sanction in this case.  The decision whether the Court will give an adverse inference instruction to the jury regarding the spoiled voice messages will be made by the Court at the appropriate time after considering the evidence the parties intend to offer regarding these voice messages at the time of trial. Neither party shall mention the voice messages nor shall the attorneys make reference to the same unless first doing so as an offer of proof outside the presence of the jury.

2.      Four Winds Motion for Partial Summary Judgment (Dkt. 64) is GRANTED IN PART AND DENIED IN PART. This case is governed by Idaho's version of the Uniform Commercial Code. Plaintiffs may not seek a refund remedy under the Magnuson-Moss Warranty Act or Idaho's version of the Uniform Commercial Code. This ruling does not preclude Plaintiffs from attempting to prove "special circumstances" within the meaning of Idaho Code § 28-2-714.

3.      Four Winds' Motion to Defer Ruling on Motion for Partial Summary Judgment (Dkt. 85) is DENIED AS MOOT.

4.      Four Winds' Motion to Certify a Question to the Idaho Supreme Court (Dkt. 86) is DENIED.



DATED: October 25, 2011

_____
Honorable Candy W. Dale
Chief United States Magistrate Judge