UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| PATRICIA MILLER and MARCIA PARKER,<br><br>        Plaintiffs,<br><br>   v.<br><br>FOUR WINDS INTERNATIONAL CORPORATION, a Delaware corporation; and DOES I through V,<br><br>        Defendant. | Case No. 2:10-cv-00254-CWD<br><br>**MEMORANDUM DECISION AND ORDER** |

## INTRODUCTION

The pretrial conference in this case took place on January 30, 2012. During the pretrial conference the Court heard oral arguments on both parties' motions *in limine* and Plaintiffs' motion to amend their complaint to include a claim for punitive damages. Having fully considered the parties' motions, briefing, and oral arguments on the motions, for the reasons discussed below, the Court will rule as follows:

(1)  Four Winds' Motion *In Limine* to Exclude Various Inadmissible Evidence, (Dkt. 88), will be granted in part and denied in part;

(2) Four Winds' Motion *In Limine* to Exclude Testimony of Larry Tompkins, (Dkt. 89), will be denied;

(3) Plaintiffs' Motion for Leave to Amend Complaint to Include Claim for Punitive Damages, (Dkt. 101), will be denied;

(4) Plaintiffs' Motion *In Limine,* (Dkt. 118), will be denied; and

(5) Four Winds' Motion *In Limine* to Exclude Mechanic Hearsay Statements, (Dkt. 119), will be denied.

## DISCUSSION

### 1. Four Winds' Motion to Exclude Various Inadmissible Evidence

In its first motion *in limine*, (Dkt. 88), Four Winds requests that the Court exclude five categories of evidence: (1) evidence of or references to other alleged incidents involving problems with motorhomes other than the one at issue in this case; (2) references to the death of Plaintiff Miller's mother; (3) speculative evidence about the value of the motorhome; (4) expert testimony from Paul and Steve Marton; and (5) evidence of alleged problems with the motorhome that arose after the limited warranty expired. Four Winds claims the above evidence is inadmissable under the Federal Rules of Evidence. Plaintiffs disagree, and ask the Court to deny the motion with regard to all five categories of evidence.

### A. *Other Incidents*

Based upon the deposition testimony of Plaintiffs' expert Larry Tompkins, Four Winds anticipates that Plaintiffs may offer evidence of incidents or problems involving motorhomes other than the one at issue in this case. Specifically, during his deposition, Mr. Tompkins testified to an incident involving another motorhome in which the

vehicle's slideout extended unexpectedly while the vehicle was being driven, which is a problem that Plaintiffs claim they experienced with the motorhome at issue in this case.[1] Four Winds asserts that "Tompkins does not know if the slideout mechanism in that incident was the same as the one on Plaintiff's motorhome, does not know any of the details about how the slideout came out, and does not have any other details of that incident." (*Mem. Of Law in Supp. Of Four Winds' Mot. In Lim. To Exclude Various Inadmissible Evid.* at 3, Dkt. 88-1.) Given Mr. Tompkins' limited knowledge of these other incidents, Four Winds argues that "any testimony or evidence about this or any other alleged incident would be inadmissible without proof of substantial similarity to the facts, circumstances, and products involved in this case." (*Id.*)

In response, Plaintiffs assert that they will seek to admit this evidence only for the purposes of qualifying Mr. Tompkins as an expert witness. (*Pl.s' Resp. To Def.'s Mot. In lim. To Exclude Various Evid.* at 3, Dkt. 129.) Plaintiffs argue that Mr. Tompkins' experience working on other motorhomes with slideout problems is germane to Mr. Tompkins' qualifications as an expert in this case and that "[h]is testimony regarding other motor homes he has inspected in the past constitute part of the basis for his experience and knowledge about the technical specialized knowledge of engineering."

---

[1] According to Four Winds the "slideout is the section of a motorhome that is slid out of the main body of the vehicle when the vehicle is parked and stationary, to provide additional living space." (*Mem. Of Law in Supp. Of Four Winds' Mot. In Lim. To Exclude Various Inadmissible Evid.* at 3, Dkt. 88-1.) It is undisputed that Plaintiffs' motorhome had three slideouts: one on the passenger side of the vehicle, and two on the driver side of the vehicle.

(*Id.*) Plaintiffs request that the Court allow the admission of the evidence for "foundational purposes in proving the qualifications of Plaintiffs' expert." (*Id.*)

Rule 403 of the Federal Rules of Evidence provides that, "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury . . . ." Fed. R. Evid. 403. The case law establishes that evidence of prior accidents must be evaluated carefully due to their inflammatory nature and possible misinterpretation by the jury. *See Barker v. Deere and Co.*, 60 F.3d 158, 162 (3d Cir. 1995) ("every court of appeals . . . agrees that when a plaintiff attempts to introduce evidence of other accidents as direct proof of a design defect, the evidence is admissible only if the proponent demonstrates that the accidents occurred under circumstances substantially similar to those at issue in the case at bar.") Given the dangers of misleading the jury and confusion of the issues, the Ninth Circuit requires a showing of "substantial similarity" before evidence of prior incidents is allowed. *Cooper v. Firestone Tire and Rubber Co.*, 945 F.2d 1103, 1105 (9th Cir. 1991) ("A showing of substantial similarity is required when a plaintiff attempts to introduce evidence of other accidents as direct proof of negligence, a design defect, or notice of the defect.").

Here, Plaintiffs are correct that Mr. Tompkins' experience in working on motorhomes with issues similar to the ones alleged in this case is pertinent to, and may be used in, establishing Mr. Tompkins' credentials as an expert. Four Winds' argument, however, is well taken. Anecdotal stories of other motorhomes' slideouts moving out

while the vehicle is being driven, without establishing substantial similarity in the incidents, may confuse the issues, mislead the jury, and ultimately result in unfair prejudice to Four Winds. Given these considerations, the Court will not restrict Plaintiffs' direct examination of Mr. Tompkins regarding his prior experience as foundation for establishing his expert credentials, but will require that Plaintiffs demonstrate substantial similarity through an offer of proof outside the presence of the jury before eliciting testimony or other evidence of other incidents in which a motorhome's slideout extended unexpectedly.

**B.      *Reference to Plaintiff's Mother's Death***

In their complaint, Plaintiffs allege that, "[b]ecause of the ongoing issues with the RV, Ms. Miller was unable to visit with her mother on her death bed." (Compl. at ¶ 3.12, Dkt. 1.) During her deposition, Ms. Miller gave an emotional account of a conversation with her mother in which she told her mother that she wanted to take her on a trip in the motorhome once her mother was released from the hospital (which release did not happen). Ms. Miller also testified that, after her mother passed away, she had to tell her family that she would not be able to drive the motorhome to her mother's funeral because it was undergoing repairs.[2] Four Winds argues that this testimony is irrelevant under Fed.

---

[2]  Ms. Miller testified as follows:

> I talked to my mother. She was in the hospital because she had headaches. And she was in the hospital on October 2nd. That night I talked to her. And she was feeling good and everything. And she says, okay, well, I'm going home

R. Evid. 401, should be excluded under Fed. R. Evid. 402, and that, even if the evidence

is relevant, its probative value is substantially outweighed by the danger of unfair

prejudice under Fed. R. Evid. 403.

Rule 401 of the Federal Rules of Evidence defines "relevant evidence" as

"evidence having any tendency to make the existence of any fact that is of consequence to

the determination of the action more probable or less probable than it would be without

the evidence." Fed. R. Evid. 401. In their response to Four Winds' motion, Plaintiffs state

"[t]he fact that Ms. Miller's mother died and she [Ms. Miller] was not able to drive the

motor home to see her before her death is relevant to her inability to use the motor home

because of its defects. (Dkt. 129 at 4.) Although they do not say it in so many words, the

"fact of consequence" offered by the Plaintiffs for purposes of Rule 401 is that Ms. Miller

was unable to use the motor home due to its defects. It is unclear how the death of Ms.

---

tomorrow. I says, Mom, come hell or high water – you know, because she says you didn't take me on my trip. I said come hell or high water, I says, I'm coming down with the coach and, you know, we're going out. And she says okay.

And I got a call at 5:00 o'clock in the morning, my mother – that one of the nurses gave her the wrong king of medications. She's vey highly allergic, which I am. And she went into anaphylactic shock. And before anybody knew what was going on, she's on life support.

Went down there. The family says can you bring the coach so we could all – so we have extra room for everybody to be. No, I can't bring the coach because – because it's not safe to drive. It's ...

(*Dep. Of Patricia Miller* at 136-137, Dkt. 88-4.)

Miller's mother makes this fact any more or less probable than it would be without the evidence.

Emotional distress damages are not available in this breach of warranty action and Plaintiffs have not explained how Ms. Miller's testimony concerning her mother's death tends to prove or disprove a fact of consequence to the determination of the case. The Court therefore finds the evidence irrelevant under Fed. R. Evid. 401 and inadmissible under Fed. R. Evid. 402. Moreover, even if the Court were to deem such evidence relevant, the Court finds there is a high probability that the evidence would unfairly appeal to the jury's emotions and should therefore be excluded under Fed. R. Evid. 403. "'Unfair prejudice' within [the] context [of Rule 403] means an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an *emotional one*." Fed. R. Evid. 403, Advisory Committee Notes (emphasis added).

Based on the above discussion, Four Winds' motion will be granted on this issue and Plaintiffs will be prohibited from introducing any evidence of or making references to Ms. Miller's mother's death or Ms. Miller's inability to drive the motorhome to her mother's funeral.

## C.    *Speculation About Value of Motorhome*

Four Winds once again raises their contention that Plaintiffs have not put forward any evidence concerning the diminution in value of the motorhome, which is the ordinary measure of damages for breach of warranty under the Idaho Code and requires a showing of the difference between the fair market value of the vehicle as warranted and its fair

market value as delivered in the allegedly defective condition. This issue previously was raised in Four Winds' motion for summary judgment and addressed in the Court's Memorandum Decision and Order entered on October 25, 2011. (Dkt. 100.) In that Order, the Court held that Plaintiffs may present evidence of "special circumstances" in this case, which provides an exception to the ordinary measure of damages for breach of warranty under Idaho law and allows the buyer to establish damages "in any manner which is reasonable." Idaho Code § 28-2-714(1).[3]

Four Winds now asks the Court to prohibit Plaintiffs from testifying that, in their opinion, the motorhome is worthless. Four Winds argues that such testimony is speculation and may not be used to establish damages under Idaho law. Four Winds' argument, however, is not supported by Idaho law. "It is a settled rule in [Idaho] that the owner of property is a competent witness to its value." *Garrett v. Neitzel*, 285 P. 472 (Idaho 1930). Indeed, the Idaho Supreme Court has expressly stated that "[t]he owner of an automobile is competent to testify to its value." *Mitchell v. Dyer*, 341 P.2d 891, (Idaho 1959) (holding that plaintiff's testimony concerning value of car before and after an accident to establish damages was properly admitted by trial court).

---

[3] In *Jensen v. Seigel Mobile Homes Group*, 668 P.2d 65 (Idaho 1983), the Idaho Supreme Court indicated that the inability to prove the amount of loss in value caused by a breach of warranty constitutes a special circumstance, "which may enable [plaintiffs] to recover on an alternative measure of damages." *Id.* at 73. The Court will not at this time entertain arguments addressed in its Memorandum Decision and Order issued on October 25, 2011.

Four Winds' motion *in limine* to preclude Plaintiffs' testimony as to the value of the motorhome is denied.

### D.    *Expert Testimony from Paul and/or Steve Marton*

Four Winds moves the Court for an order precluding Plaintiffs from offering Paul and Steve Marton as expert witnesses.

On February 24, 2011, Plaintiffs moved the Court to modify the case management order and extend the expert witness disclosure deadline so that they could disclose Paul and Steve Marton as experts. (Dkt. 32.) That motion was denied based on Plainitffs' failure to show good cause for the late disclosure. (Dkt. 34.) Although the Court denied Plaintiffs' request to name the Martons as experts, the Order expressly provides that "[n]othing in this Order should be construed as limiting Plaintiffs from utilizing Paul and Steve Mart[o]n as *fact witnesses* in this case if they are competent to testify as such under the Federal Rules of Evidence." (*Order* at 4 n.3, Dkt. 34) (emphasis added). Four Winds requests in its motion *in limine* that "[t]he Court should adhere to its February 25 ruling and Order by excluding any expert testimony from Paul or Steve Marton." (Dkt. 88-1 at 11.)

In response, Plaintiffs state that, after the February 25, 2011 Order, they again moved to extend expert witness disclosure deadlines. Plaintiffs state that the motion was heard on May 17, 2011, "at which time the Court ruled that it would not exclude Paul and Steve Marton from offering such evidence, as it remains to be seen if they are the types of expert witness whose testimony must be disclosed prior to trial." *(Pl.s' Resp. To Def.'s*

*Mot. In lim.* at 5, Dkt. 129.) Contrary to Plaintiffs' assertion, the Court did not alter its previous ruling. The Martons were not timely disclosed as expert witnesses and they may not be offered as such at trial. The extent to which either Marton (or other lay witnesses) may give opinion testimony will be addressed by the Court at the time of trial pursuant to Rule 701 of the Federal Rules of Evidence.

### E.    *Post-Warranty Problems*

Four Winds moves the Court for an order excluding any alleged problems or issues with the motorhome arising after the expiration of the limited warranty–June 12, 2009. Specifically, Four Winds seeks the exclusion of a recall notice issued on May 16, 2011, by the supplier of the refrigerator in Plaintiffs'motorhome. Four Winds argues that the recall has no relevance to the issues presented in this case because it was issued long after the limited warranty expired. Four Winds also argues that the recall notice constituted a subsequent remedial measure under Rule 407 of the Federal Rules of Evidence and is inadmissible under that rule.

Plaintiffs argue that Four Winds' reliance on Rule 407 is misplaced, pointing out that the rule bars subsequent remedial measures from being used as evidence of design defect, which is not at issue in this case. Plaintiffs also anticipate that Four Winds' witnesses will testify that there were no problems with the motorhome or that the failure of the refrigerator to function appropriately involved operator error, and that the Court should allow the admission of the recall notice as impeachment evidence.

Rule 407 expressly contemplates that subsequent remedial measures may be used for purposes of impeachment. Therefore, the recall notice may be used for that purpose. The Court finds, however, that it will be in a better position to rule on this issue at trial. The motion will therefore be denied on this issue at this time without prejudice.

**2.      Four Winds' Motion to Exclude the Expert Testimony of Larry Tompkins**

Plaintiffs have disclosed mechanical engineer Larry L. Tompkins as an expert witness. According to Mr. Tompkins' expert report, he was retained to determine the extent of the service issues with Plaintiffs' motorhome, the number of repair attempts, and the likelihood of future problems with the motorhome. (Dkt. 127-1.) Four Winds moves the Court for an order excluding certain opinions espoused by Mr. Tompkins during his deposition. Specifically, Four Winds challenges the following opinions:

1.      The service issues Plaintiffs have experienced are the result of the motorhome not being designed to a "deflection criteria." (*Dep. Of Larry Tompkins*, 12-13, Dkt. 89-3.)

2.      Very little durability and reliability testing is done by motorhome manufacturers. (*Id*. at 21-22.)

3.      The service history for Plaintiffs' motorhome is unacceptable. (*Id*. at 68-69.)

4.      The design of the motorhome has inadequate stiffness and that inadequacy has caused the problems Plaintiffs have allegedly experienced. (*Id*. at 109-111.)

5.      The alleged floor crowing, passenger slideout, and galley/kitchen slideout issues all stem from defects in design of the motorhome. (*Id*. at 122-23, 125-26.)

6.      Four Winds inadequately tested the motorhome prior to selling the Presidio

model. (*Id*. at 137-38.)

7. The defects in the design of the passenger slideout create the possibility for loss of control or a vehicle rollover. (*Id*. at 142.)

Four Winds argues that the above opinions are inadmissible for three reasons. First, Four Winds argues that the opinions concerning the design of the motorhome are irrelevant to Plaintiffs' claim for breach of warranty. Second, Four Winds argues that Mr. Tompkins failed to supply the factual foundation for these opinions and that they are nothing more than his own subjective beliefs and unfounded speculation. Third, Four Winds argues that Mr. Tompkins' opinions are not based upon reliable principles and methods and must therefore be excluded under Fed. R. Evid. 702.

In *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), the United States Supreme Court "charged trial judges with the responsibility of acting as gatekeepers to 'ensure that any and all scientific testimony . . . is not only relevant, but reliable." *Guidroz-Brault v. Mo. Pac. R.R. Co.*, 254 F.3d 825, 829 (9th Cir. 2001) (quoting *Daubert*, 509 U.S. at 589). Then, in *Kumho Tire Co., LTD v. Carmichael*, 526 U.S. 137, 147 (1999), the Court clarified that this gate-keeper function applies to all expert testimony, not just testimony based in science.

Rule 702 of the Federal Rules of Evidence, which governs the admissibility of expert opinion testimony, provides that "[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or

education, may testify thereto in the form of an opinion or otherwise" if three conditions are met. Fed. R. Evid. 702. Those three conditions include: "(1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case." Fed. R. Evid. 702. Four Winds attacks Mr. Tompkins' opinions on all three conditions.

### A.    *Opinions Concerning Design*

Rule 702 requires that the evidence "assist the trier of fact." Fed. R. Evid. 702. This requires that the evidence be relevant. *Guidroz-Brault*, 254 F.3d at 829. Four Winds argues that any testimony concerning "design defects" is irrelevant in this case and should therefore be excluded.

The limited warranty at issue in this case provides for the repair or replacement of defective material or workmanship. (Dkt. 67-3.) It also warrants that "the *structural components* of your Presido RV will be free from substantial defects in material and workmanship." (*Id.*) However, the warranty expressly excludes "[i]tems that are working as designed but that you are unhappy with because of the design." (*Id.*)

Because the limited warranty does not cover design defects, the Court agrees that, in the abstract, evidence concerning defects in the design of the motorhome is irrelevant to Plaintiffs' claim for breach of warranty. However, based upon Mr. Tompkins' expert report, it appears to the Court that the line between design defects and whether Four Winds breached the terms of the limited warranty in this case is less clear than Four

Winds would have the Court conclude.

In his expert report, and during his deposition testimony, Mr. Tompkins offered opinions concerning what he refers to as "deflection" problems associated with Plaintiffs' motorhome. Mr. Tompkins' opinion, as the Court understands it, is that the frame of the motorhome is not structurally stiff enough and that when the vehicle is driven or put on jacks, the walls of the motorhome become deformed causing the slideouts not to fit properly. It is not entirely clear whether Mr. Tompkins' opinions concerning the motorhome's deflection problems are purely a design issue, related to defects in material or workmanship, or a combination of both. Moreover, assuming for the moment that the deflection problems are a product of a design defect, it is unclear whether that alone would render Mr. Tompkins' opinions on the subject irrelevant. Plaintiffs claim that Four Winds did not adequately repair the problems with the slideouts. If the reason the slideouts were not, and perhaps could not, be repaired was because every time the motorhome was driven the walls became deformed due to the deflection problem, the deflection issue may very well be relevant to Plaintiffs' breach of warranty claim. The parties have not directly addressed this issue and the Court will not do so on its own.

The Court will not rule on the relevance of particular statements made during Mr. Tompkins' deposition, or in his expert report, at this time, but will caution Plaintiffs that evidence related solely to the design of the motor home most likely will be found irrelevant to Plaintiffs' breach of warranty claim and susceptible to proper and sustained

objection if Four Winds makes such objection at the time of trial.[4] However, the Court will be better situated to rule on the relevance and admissibility of Mr. Tompkins' opinions at the time of trial when the Court will have the benefit of Mr. Tompkins' actual testimony. Four Winds' motion requesting a ruling *in limine* on this issue will therefore be denied.

### B.      *Factual Foundation for Opinions*

Under Rule 702 of the Federal Rules of Evidence, an expert opinion must be "based upon sufficient facts or data." Fed. R. Evid. 702. "[A]n Expert must back up his opinion with specific facts." *U.S. v. Various Slot Machines on Guam*, 658 F.2d 697, 700 (9th Cir. 1981). And, as the United States Supreme Court has stated, "expert testimony must have a traceable, analytical basis in objective fact before it may be considered . . . ." *Bragdon v. Abbot*, 524 U.S. 624, 653 (1998).

In his expert report, Mr. Tompkins states that

> Slide-out failures can be considered a safety-related defect. In the event of a failure to retain a slide-out in the retracted position during over-the-road travel, uncommanded extension of a slide-out could potentially result in a collision with another vehicle or a center-of-gravity shift that could result in a loss of control or a rollover accident.

(*Tompkins' Expert Report* at 2, Dkt. 127-1.) He made a similar statement in his deposition. Four Winds argues that Mr. Tompkins has no factual basis for this opinion

---

[4]  The Court anticipates that the jury will be instructed on the scope of the limited warranty.

and that such testimony should be excluded. Specifically, Four Winds directs the Court to Mr. Tompkins' deposition, in which he testified that he could not calculate how far the center of gravity of a motorhome would need to shift to cause a rollover without knowing the weight of the slideout and the location of the center of gravity in the vehicle. (*Dep. Of Tompkins* at 143-44, Dkt. 89-3.) Mr. Tompkins also stated that, although the analysis could be done, he did not conduct such an analysis in this case. (*Id.* at 144-45.)

Plaintiffs argue that Mr. Tompkins' opinion is based on sufficient facts, including multiple inspections of the motorhome, discussions with mechanics, discussions with the service repair facility, discussions with the owners and operators, service records, and testing of the motorhome.

The Court will be better situated during trial to rule on this issue. Based upon Mr. Tompkins' experience, the general opinion that a slideout extending uncommanded posses a safety risk may not be problematic under Rule 702. However, a more specific opinion, such as an opinion that the slideout in this case would cause Plaintiffs' motorhome to roll-over, is the type of opinion requiring a more definable factual basis. *Hall v. Baxter Healthcare Corp.*, 947 F. Supp. 1387, 1402 (D. Or. 1996) (excluding expert testimony on the ground that it was "an untested hypothesis"). Because pretrial evidentiary rulings are prospective in nature–where the court has not yet seen the challenged evidence–and because they restrict the opposing party's presentation of his or her case, courts have recognized that motions *in limine* should only be granted sparingly and only in "those instances when the evidence plainly is 'inadmissible on all potential

grounds.'" *Wilkins v. Kmart Corp.*, 487 F. Supp. 2d 1216, 1218-19 (D. Kan. 2007) (quoting *Townsend v. Benya*, 287 F. Supp. 2d 868, 872 (N.D. Ill. 2003)). Here, the Court cannot say that Mr. Tompkins' opinions concerning the safety risks created by the slideouts on Plaintiffs' motorhome are inadmissible on all potential grounds without having the benefit of hearing Mr. Tompkins' testimony at trial. Four Winds' motion will therefore be denied on this issue.

### C. *Reliable Principles or Methods*

Under Rule 702 of the Federal Rules of Evidence, expert opinions must be "the product of reliable principles and methods." Fed. R. Evid. 702.

In his report, Mr. Tompkins states that, based on "[t]he difference in deflection between the loading condition when the vehicle is on its wheel[s] and the loading condition when the vehicle is on its leveling jacks," "[t]he chassis and body of this motor home do not have sufficient stiffness to prevent this difference in deflection." (Dkt. 127-1 at 10.) Mr. Tompkins also opines that the rate at which Plaintiffs' motorhome required repairs was unacceptable. (*Id*. at 17.) Four Winds argues that Mr. Tompkins' methodology used in forming these opinions was unreliable and that he should be prohibited from offering those opinions during trial.

Plaintiffs argue that both of the above challenged opinions are based upon Mr. Tompkins' education and work experience. For instance, Plaintiffs point out that Mr. Tompkins has a degree in mechanical engineering, and for the last forty years he has designed and tested vehicles, trucks and heavy trucks. Plaintiffs argue that the application

of Mr. Tompkins' experience to the facts of this case constitutes a reliable methodology within the meaning of Rule 702.

Plaintiffs are correct that experience may act as the basis for a reliable opinion for the purposes of Rule 702. The text of Rule 702 expressly contemplates that an expert may be qualified on the basis of experience. And, the Advisory Committee Notes to Rule 702 state that "[n]othing in this amendment is intended to suggest that experience alone–or experience in conjunction with other knowledge, skill, training or education–may not provide a sufficient foundation for expert testimony." Fed. R. Evid. 702 Advisory Committee Notes to 2000 amendment. "In certain fields, experience is the predominant, if not sole, basis for a great deal of reliable expert testimony." *Id.* (citing *U.S. v. Jones*, 107 F.3d 1147 (6th Cir. 1997)); *See also*, *Tassin v. Sears Roebuck*, 946 F. Supp. 1241, 1248 (M.D. La. 1996) (design engineer's testimony can be admissible when the expert's opinions "are based on facts, a reasonable investigation, and traditional technical/mechanical expertise, and he provides a reasonable link between the information and procedures he uses and the conclusions he reaches").

"If the witness is relying solely or primarily on experience, then the witness must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts." Fed. R. Evid. 702 Advisory Committee Notes to 2000 amendment. The trial court's gatekeeping function requires more than simply "taking the expert's word for it." *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 43 F.3d 1311, 1319 (9th Cir. 1995). However, "the

trial court's role as gatekeeper is not intended to serve as a replacement for the adversary system," *U.S. v. 14.38 Acres of Land Situated in Leflore County, Mississippi*, 80 F.3d 1074, 1078 (5th Cir. 1996), and "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 595.

Here, Mr. Tompkins' opinions are based on his experience. And, while he is not particularly articulate in his deposition testimony, especially in the excerpts provided to the Court by Four Winds, he does not ask the Court to accept his opinions *ipsi dixit*. Indeed, upon review of his expert report, Mr. Tompkins refers to several standards and manuals related to engineering design and test standards, which were attached to his report. He also outlines his experience and, during his deposition, attempts to explain how he came to the conclusion that the rate of repairs was unacceptable. For instance, he states that, when he first inspected the vehicle, 40% of the miles were accumulated transporting the vehicle to and from warranty repair facilities. Based on his experience, he concluded that this was excessive.

Mr. Tompkins satisfies the minimum reliability requirements under Rule 702 and the concerns raised by Four Winds may well be cured through "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof." *Daubert*, 509 U.S. at 595.  Therefore, Four Winds motion *in limine* on this issue will be denied.

**3.    Plaintiffs' Motion to Include Claim for Punitive Damages**

Plaintiffs request that the Court allow them to amend their complaint to present a claim for punitive damages. (Dkt. 101.) In support of their motion, Plaintiffs claim that "Defendant Four Winds International Corporation has acted oppressively, maliciously, and outrageously with respect to its actions toward the [Plaintiffs]." (*Mem. In Supp. Of Pl.s' Mot. For Punitive Damages* at 2, Dkt. 102.) For the reasons that follow, Plaintiffs' motion will be denied.

Claims for punitive damages are substantive and Idaho law is controlling on this issue. *Strong v. Unumprovident Corp.*, 393 F. Supp. 2d 1012, 1025 (D. Idaho 2005). Pursuant to Idaho Code § 6-1604, "a party may, pursuant to a pretrial motion and after hearing before the court, amend the pleadings to include a prayer for relief seeking punitive damages." Idaho Code § 6-1604(2). "The court shall allow the motion to amend the pleadings if, after weighing the evidence presented, the court concludes that, the moving party has established at such hearing a reasonable likelihood of proving facts at trial sufficient to support an award of punitive damages." *Id.*

The Idaho Supreme Court has indicated that trial courts should permit a claim for punitive damages to proceed when a defendant acted in a manner that was "an extreme deviation from reasonable standards of conduct, and that the act was performed by the defendant with an understanding of or disregard for its likely consequences." *Garnett v. Transamerica Ins. Services*, 800 P.2d 656, 668 (Idaho 1990) (quoting *Cheney v. Palos Verdes Inv. Corp.*, 665 P.2d 661, 669 (Idaho 1983)).

MEMORANDUM DECISION AND ORDER - 20

The Idaho Supreme Court also has made clear that the determination of whether a party should be permitted to assert a claim for punitive damages "revolves around whether the plaintiff is able to establish the requisite intersection of two factors: a bad act and a bad state of mind." *Seiniger Law Office, P.A. v. N. Pac. Ins. Co.*, 178 P.3d 606, 615 (Idaho 2008). Concerning the second factor, the Idaho Supreme Court has clarified that "[t]he mental state required to support an award of punitive damages is an extremely harmful state of mind, whether that be termed malice, oppression, fraud or gross negligence; malice, oppression, wantonness; or simply deliberate or willful." *Id.*

Here, Plaintiffs direct the Court to five alleged "bad acts" that they argue demonstrate the extremely harmful state of mind required to present a claim for punitive damages. Each will be addressed below.

First, Plaintiffs argue that they were not dealt with in a straight-forward manner and were "frustrated by the number of people at Four Winds that they had to deal with, never being able to talk to the same person about her issues." (Dkt. 102 at 12.) Four Winds argues that having multiple people available to address customer concerns does not evince mal intent. Four Winds also argues that "[t]here is absolutely no evidence in this case–expert or otherwise–that Four Winds' handling of customer-service calls constitutes extreme or irrational business conduct." (*Def.'s Brief in Resp. To Pl.s' Mot. For Leave to Amend Compl. To Include Claim for Punitive Damages* at 7, Dkt. 107.) The Court agrees and finds that this alleged "bad act" does not demonstrate the intent necessary to present a claim for punitive damages.

Second, Plaintiffs argue that Four Winds' efforts to inspect and repair the motorhome were "riddled with false representations and ineffective attempts at repair." (*Id*.) In support of their claim that misrepresentations were made, Plaintiffs direct the Court to the incident in which Ms. Miller drove the RV to California only to find out that the repair shop was closed and she had to wait six months for repairs before she could return the RV to Idaho. Four Winds asserts that Plaintiff was informed that a Four Winds' employee could transport the motorhome to California, but that Plaintiff said she needed to discuss the issue with her family. Four Winds claims that the repair facility did not have an appointment scheduled for Ms. Miller because neither Four Winds nor the repair facility knew when Plaintiff was going to arrive.

Four Winds also asserts that, even assuming the truth of Plaintiffs' allegations about long waits and slow repairs, there is no evidence of bad intent to support a claim of punitive damages. Four Winds has the better argument on this issue. "A breach of contract by itself is not sufficient to warrant an award of punitive damages." *Gen. Auto Parts Co. v. Genuine Parts Co.*, 979 P.2d 1207, 1211 (Idaho 1999). And, even in cases where there is evidence that a contract was intentionally breached, a claim for punitive damages requires evidence of malice on the part of the breaching party. *Id*. In the absence of evidence of bad intent, allowing a plaintiff to pursue a claim of punitive damages is improper. Although Ms. Miller's experience with the repair process in this case was undoubtedly frustrating, because Plaintiffs have presented no evidence of bad faith, the Court finds that this alleged "bad act" does not demonstrate the intent necessary to

present a claim for punitive damages.

Third, Plaintiffs allege that Rick Drinkwine–Four Winds' former customer affairs manager–verbally told Ms. Miller that Four Winds would replace the RV if one could be found, and that the failure of Four Winds to replace the RV after such a representation demonstrates the bad intent necessary to present a claim for punitive damages. Four Winds argues that there was nothing "untoward" about this representation–Four Winds admits such conversations took place and that the company was simply unable to locate a replacement RV.

Fourth, Plaintiffs argue that Four Winds agreed to settle Plaintiffs' claims for $45,000 payment and the rebuilding of the motorhome, and the subsequent withdrawal of the offer demonstrates bad intent. Four Winds presents an alternative version of the facts concerning the settlement negotiations, but ultimately claim that Plaintiffs' allegations about the unsuccessful settlement negotiations undermine their argument for punitive damages because it demonstrates that Four Winds made efforts to work with Plaintiffs and resolve their claims. Evidence of the settlement negotiations does not demonstrate the bad intent necessary to present a claim for punitive damages.

Finally, Plaintiffs argue that, "[p]erhaps the most significant evidence of the Defendant's bad state of mind is its active attempts to prevent the Plaintiffs from obtaining information and lack of cooperation regarding the problems with the coach." (Dkt. 102 at 15.) This alleged bad act concerns an email message that Four Winds Customer Service Representative Mark Stanley sent to Blue Dog RV employee Monica

Yurick. In the email, Ms. Yurick is told that she is "not supposed to share information with the owner of the coach." (*Dep. Of Monica Yurick*, 75:21-76:2, Dkt. 103.) During a discussion that took place after the email, Ms. Yurick was told that the reason for the instruction was that it was confidential information and that is was strictly between the dealer and the factory. In response, Four Winds represents that confidentiality between customer service representatives and dealers is not unusual in the motorhome (or any other automobile) manufacturing industry and that Plaintiffs have failed to present any evidence that the instruction given to Ms. Yurick deviated from industry practice. Given this lack of evidence, the email in itself does not necessarily constitute a bad act or evidence of bad intent.

Plaintiffs seeking punitive damages must prove their claim by clear and convincing evidence. Idaho Code § 6-1604(1). This requires "[e]vidence indicating that the thing to be proved is highly probable or reasonably certain.'" *In re Adoption of Doe*, 141 P.3d 1057, 1060 (Idaho 2006) (quoting Black's Law Dictionary 577 (7th ed. 1999)) (alteration in original). The Court finds that Plaintiffs have not demonstrated a reasonable likelihood that they could make a showing at trial–through clear and convincing evidence–that Four Winds (or its employees) acted with the bad intent necessary to sustain a claim for punitive damages. *See* Idaho Code § 6-1604 ("The court shall allow the motion to amend the pleadings if, after weighing the evidence presented, the court concludes that, the moving party has established at such hearing a reasonable likelihood of proving facts at trial sufficient to support an award of punitive damages.") Plaintiffs' motion to amend

will therefore be denied.

### 4. Plaintiffs' Motion *In Limine*

Plaintiffs have filed what they style a motion *in limine*. (Dkt. 118.) The document is one page, consisting of seven lines, and moves the Court "to exclude the opinions and testimony of the Defendant's expert witnesses, James J. Keough, Douglas Lown, and James Crosley." (*Pl.'s Mot. In Lim.*, Dkt. 118.) The motion then states that "Plaintiffs reserve the right to make specific objections and present oral argument at the time any objections are made to testimony or opinions that are presented at trial." (*Id.*)

The Local Rules require "[e]ach motion, other than a routine or uncontested matter, [to be] accompanied by a separate brief . . . containing all of the reasons and points and authorities relied upon by the moving party." Dist. Idaho Loc. Civ. R. 7.1(b)(1). At the hearing on the parties' motions, Plaintiffs stated that they intended the 'motion' to be a "reservation of their right to object." The Court is aware of no such requirement. Based on Plaintiffs' failure to file a memorandum of points and authorities in support of their motion, the motion will be denied without prejudice. If Plaintiffs have objections to Four Winds' expert witnesses, they may raise those objections at the time of trial.

### 5. Four Winds' Motion to Exclude Hearsay Statements

During her deposition, Plaintiff Marcia Parker testified about an incident where the motorhome would not start and she called a mechanic about the problem. According to Ms. Parker, the unidentified mechanic warned her not to try to jump-start the motorhome

because the batteries could explode if she did so. Specifically, Ms. Parker testified that:

"he said, don't go near the coach. Don't try to start the coach. Don't jump the coach. He said you could risk explosion with the batteries." (*Dep. Of Marcia Parker* at 108, Dkt. 121-1.) Four Winds contends that this testimony is hearsay and should be excluded at trial under Fed. R. Evid. 802.

Plaintiffs argue that the motion is premature, stating that "[i]f the Defendant wishes to make a hearsay objection to live testimony presented at trial, it should make that motion at the time of the testimony." (Dkt. 128 at 2.) Plaintiffs cite no authority for the proposition that hearsay statements cannot be the subject of a motion *in limine*. Plaintiffs do, however, assert that the mechanic can be identified and may be included in the witness list, which is due February 17, 2012.

Four Winds' motion will be denied on this issue at this time. The Court will address objections, including hearsay, at the time of trial. However, counsel for both parties should proceed with caution during opening statements concerning evidence that may not be found admissible during trial.

## **ORDER**

Based on the foregoing, the Court being otherwise fully advised in the premises, IT IS HEREBY ORDERED that:

1.      Four Winds' Motion *in Limine* to Exclude Various Inadmissible Evidence, (Dkt. 88), is GRANTED in part and DENIED in part as follows:

        a.      Concerning other incidents, the Court will not restrict Plaintiffs'

direct examination of Mr. Tompkins regarding his prior experience as foundation for establishing his expert credentials. Plaintiffs will be required, however, to demonstrate substantial similarity through an offer of proof outside the presence of the jury before eliciting testimony or other evidence of prior incidents in which a motorhome's slideout extended unexpectedly.

b.  Plaintiffs are prohibited from introducing any evidence of or making references to Ms. Miller's mother's death or Ms. Miller's inability to drive the motorhome to attend the funeral for her mother.

c.  Plaintiffs may not offer Paul or Steve Marton as expert witnesses. The extent to which either Marton may give lay opinion testimony under Fed. R. Evid. 701 will be addressed at trial.

d.  Four Winds' motion is denied in all other respects in accordance with the above memorandum.

2.  Four Winds' Motion *in Limine* to Exclude Testimony of Larry Tompkins, (Dkt. 89), is DENIED in accordance with the above memorandum.

3.  Plaintiffs' Motion for Leave to Amend Complaint to Include Claim for Punitive Damages, (Dkt. 101), is DENIED.

4.  Plaintiffs' Motion *in Limine*, (Dkt. 118), is DENIED.

5.  Four Winds' Motion *in Limine* to Exclude Mechanic Hearsay Statements, (Dkt. 119), is DENIED in accordance with the above memorandum.

IT IS FURTHER ORDERED that the parties shall advise opposing counsel as well as the Court in advance of when they anticipate evidentiary issues to arise during trial so that, if necessary, the Court can consider such issues outside the presence of the jury. The parties are instructed to jointly communicate with the Court's law clerk throughout the day and at the end of each day of trial regarding upcoming issues.



DATED: February 13, 2012

Honorable Candy W. Dale
Chief United States Magistrate Judge